# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# COLUMBIA DIVISION

| | |
|---|---|
| WILLIAM D. HAMBY, JR., #135146, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 1:24-cv-00101 |
| ) | |
| DAMON HININGER,[1] et al., ) | JUDGE CAMPBELL |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is a pro se Complaint under 42 U.S.C. § 1983 (Doc. No. 1) and an application for leave to proceed in forma pauperis (IFP) (Doc. No. 4) filed by William Hamby, Jr., an inmate of the South Central Correctional Facility (SCCF) in Clifton, Tennessee. The case is before the Court for ruling on Plaintiff's IFP application and initial review of the Complaint under the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915A.

## I. APPLICATION TO PROCEED IFP

Prisoners bringing civil lawsuits are "required to pay the full amount of a filing fee," but that payment may be made in installments over time via an assessment against the prisoner's inmate trust account, rather than in a lump sum at the time of filing, if the prisoner is granted IFP status. 28 U.S.C. § 1915(b)(1)–(2). However, a prisoner may not file a civil action IFP in district court if he has, "on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the

---

[1] Plaintiff filed a motion to ascertain status and to correct the spelling of Defendant Hininger's last name (Doc. No. 5) after the name was mistakenly entered on the docket as "Hinger." Plaintiff's motion is **GRANTED**. The Clerk shall correct Defendant Hininger's name on the docket of this case.

prisoner is under imminent danger of serious physical injury." *Id.* § 1915(g). Plaintiff has previously filed three such actions in this Court. *See Hamby v. Lingle*, No. 3:12-cv-00942, Doc. Nos. 3–4 (M.D. Tenn. Sept. 18, 2012) (dismissing for failure to state a § 1983 claim because defendant is not a state actor); *Hamby v. Thomas, et al.*, No. 3:13-cv-00127, Doc. Nos. 4–5 (M.D. Tenn. Feb. 19, 2013) (dismissing false arrest/false imprisonment/malicious prosecution action for failure to state a claim in the absence of credible allegations that probable cause to arrest, detain, and prosecute was lacking); *Hamby v. Metro Nashville Police Dep't*, No. 3:12-cv-00879, Doc. Nos. 80–81 (M.D. Tenn. Jan. 31, 2014) (dismissing for failure to state a claim because of the bar of *Heck v. Humphrey*, and because claims against police department and officer were not supported by sufficient factual allegations). In light of these prior dismissals, Plaintiff is a "three-striker" who may only proceed as a pauper in this action if he is in "imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

To fall within this statutory exception, the danger Plaintiff is facing must be a "real and proximate" threat of serious physical injury that existed at the time the Complaint was filed. *Rittner v. Kinder*, 290 F. App'x 796, 797 (6th Cir. 2008) (citing, *e.g.*, *Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir. 2003)). This standard requires that Plaintiff "allege[] facts from which a court, informed by its judicial experience and common sense, could draw the reasonable inference that [he] was under an existing danger"—not a past danger—when he filed the Complaint. *Vandiver v. Prison Health Servs., Inc.*, 727 F.3d 580, 585 (6th Cir. 2013) (internal quotation marks and citations omitted). In determining whether the standard is met, the Court must construe the Complaint liberally, as "the imminent danger exception is essentially a pleading requirement subject to the ordinary principles of notice pleading." *Id.* Still, Plaintiff's allegations "must not be irrational, incredible, or speculative, and must describe with sufficient detail why [he] is in

imminent danger." *Lapine v. Waino*, No. 17-1636, 2018 WL 6264565, at *2 (6th Cir. Oct. 11, 2018) (citing *Vandiver*, 727 F.3d at 585).

Plaintiff alleges that Core Civic President Damon Hininger allowed SCCF Warden Perry, Associate Warden Moon, Chief of Security Williams, and Sergeant Smith to move him from SCCF's minimum-custody annex to a medium-custody pod, and that Captain White, Captain Franks, and Ms. Van Dyke then proceeded to ignore his warnings that the move to medium custody put him in imminent danger because he was a federal witness. (Doc. No. 1 at 3.) Incarcerated members of the La Raza gang subsequently threatened Plaintiff in his cell, then threatened him again when he was moved to a different cell in the medium-custody pod. Franks, White, Williams, Perry, Moon, and Lt. Carroll were notified of these threats but ignored them. (*Id.*) Days later, Plaintiff was put in a different cell, but La Raza gang members came to his new cell and threatened to kill him. (*Id.*) This threat was ignored by staff including Lt. Carroll, who came to Plaintiff's cell and told him to stay there. (*Id.*) The next day, Plaintiff was assaulted by a La Raza gang member and fell from the "top tier," resulting in bruising, bleeding, and difficulty seeing well due to being kicked in the head. (*Id.*) After the attack, Carroll allegedly referred to Plaintiff as a "bitch ass rat," "since he (Carroll) deals dope to 'La Raza' gang." (*Id.*) Plaintiff was then moved to segregation and ultimately to protective custody; however, even in protective custody he is exposed to three La Raza gang members who work in the "Skylab unit" through which Plaintiff must pass, in handcuffs, when he is "sent to appointments." (*Id.* at 5.) Plaintiff filed this action shortly after the attack and his move to protective custody.

Taking these allegations as true, the Court finds that Plaintiff has adequately alleged that he was under imminent danger of serious physical injury at the time the Complaint was filed, based on his continuing vulnerability to attack by inmate gang members despite his placement in

3

protective custody. He is thus eligible to proceed IFP in this matter.

Because it appears from Plaintiff's IFP application that he lacks the funds to pay the entire filing fee in advance, that application (Doc. No. 4) is **GRANTED** and a $350 filing fee[2] is **ASSESSED**.

The warden of the facility in which Plaintiff is currently housed, as custodian of his trust account, is **DIRECTED** to submit to the Clerk of Court, as an initial payment, the greater of: (a) 20% of the average monthly deposits to Plaintiff's credit at the jail; or (b) 20% of the average monthly balance to Plaintiff's credit for the six-month period immediately preceding the filing of the Complaint. 28 U.S.C. § 1915(b)(1). Thereafter, the custodian shall submit 20% of Plaintiff's preceding monthly income (or income credited to Plaintiff for the preceding month), but only when the balance in his account exceeds $10. *Id.* § 1915(b)(2). Payments shall continue until the $350 filing fee has been paid in full to the Clerk of Court. *Id.* § 1915(b)(3).

The Clerk of Court **MUST** send a copy of this Order to the warden of the facility in which Plaintiff is currently housed to ensure compliance with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If Plaintiff is transferred from his present place of confinement, the custodian must ensure that a copy of this Order follows Plaintiff to his new place of confinement, for continued compliance with the Order. All payments made pursuant to this Order must be submitted to the Clerk of Court for the United States District Court for the Middle District of Tennessee, 719 Church Street, Nashville, TN 37203.

---

[2] While prisoners who are not granted pauper status must pay a total fee of $405—a civil filing fee of $350 plus a civil administrative fee of $55—prisoners who are granted pauper status are only liable for the $350 civil filing fee. *See* 28 U.S.C. § 1914(a)–(b) & Dist. Ct. Misc. Fee Schedule, provision 14 (eff. Dec. 1, 2023).

## II. INITIAL REVIEW

### A. Legal Standard

In cases filed by prisoners, the Court must conduct an initial screening and dismiss the Complaint (or any portion thereof) if it is facially frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). Review under the same criteria is also authorized under 28 U.S.C. § 1915(e)(2) when the prisoner proceeds IFP.

To determine whether the Complaint states a claim upon which relief may be granted, the Court reviews for whether it alleges sufficient facts "to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). At this stage, "the Court assumes the truth of 'well-pleaded factual allegations' and 'reasonable inference[s]' therefrom," *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 181 (2024) (quoting *Iqbal*, 556 U.S. at 678–79), but is "not required to accept legal conclusions or unwarranted factual inferences as true." *Inner City Contracting, LLC v. Charter Twp. of Northville, Michigan*, 87 F.4th 743, 749 (6th Cir. 2023) (citation omitted). The court must afford the pro se Complaint a liberal construction, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), while viewing it in the light most favorable to the plaintiff. *Inner City*, *supra*.

Plaintiff filed the Complaint under Section 1983, which authorizes a federal action against any person who, "under color of state law, deprives [another] person of rights, privileges, or immunities secured by the Constitution or conferred by federal statute." *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012) (citations omitted); 42 U.S.C. § 1983. The Complaint must therefore plausibly allege (1) a deprivation of a constitutional or other federal right, and (2)

5

that the deprivation was caused by a "state actor." *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

**B. Analysis**

The Complaint seeks damages against all Defendants in their individual capacity. (Doc. No. 1 at 5, 7.) It asserts that Defendants Hininger, Perry, Moon, Williams, and Smith orchestrated Plaintiff's move from the minimum-security SCCF Annex to a medium-security pod, when "by policy" he should have remained in the Annex due to his classification as a "minimum direct custody inmate." (Doc No. 1 at 3.) Without specifying the policy or alleging that it created an expectation in Annex housing sufficient to rise to the level of a state-created liberty interest, this assertion does not support any claim under federal law. *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (noting "that the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement") (citation omitted); *Merchant v. Hawk-Sawyer*, 37 F. App'x 143, 145 (6th Cir. 2002) (stating that there is "no constitutional right to be held in a specific security classification"). And the failure to follow an internal prison policy is not alone sufficient to support a constitutional claim. *Helphenstine v. Lewis Cnty., Kentucky*, 60 F.4th 305, 322 (6th Cir. 2023). Because allowance for Plaintiff's move from the SCCF Annex is the only action he attributes to Defendants Hininger and Smith, these two Defendants will be dismissed from this action.

Likewise, the only allegation against Defendant Baker is that she "cursed" Plaintiff and said he deserved his injuries. (*Id.* at 5.) This assertion of verbal abuse is not sufficient to support any federal claim, *see Wingo v. Tennessee Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012) (finding "[v]erbal harassment or idle threats by a state actor" insufficient to state a constitutional

6

claim under § 1983) (citing *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987)), so Defendant Baker will also be dismissed from this action.

Finally, Defendant Van Dyke is alleged to have been warned on one occasion by Plaintiff —before gang members threatened him—that his move from the Annex to a medium-custody pod would place him in imminent danger because he was a federal witness. (*See* Doc. No. 1 at 3.) Van Dyke is only mentioned one other time in the Complaint, when she is alleged to be the "Unit Manager" of "Skylab unit/Ad-seg," where Plaintiff was transferred after he was attacked in the medium-security pod. (*Id.* at 5.) Plaintiff has thus failed to plead sufficient "factual content that allows the court to draw the reasonable inference" that Van Dyke could be held liable for the attack, or for any other misconduct. *Lipman v. Budish*, 974 F.3d 726, 740 (6th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678). She too will be dismissed from this action.

As to Defendants Perry, Moon, Williams, Carroll, White, and Franks, the Complaint alleges that all these individuals ignored Plaintiff's warnings that the La Raza gang had threatened to harm him. Some or all of these Defendants are alleged to have let members of the La Raza gang threaten and assault Plaintiff in an encounter that was "orchestrated, pre-planned," and that unnamed "staff" allowed to continue without deploying their pepper spray—all of which are claimed to have violated Plaintiff's constitutional rights. (Doc. No. 1 at 5, 7.) For purposes of initial review, the Court finds Plaintiff's factual allegations sufficient to support a plausible Eighth Amendment failure-to-protect claim.

The Supreme Court has held that "the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). An Eighth Amendment violation may occur when prison guards fail to protect one inmate from an attack by

7

another inmate. *See Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990). However, "not all injuries suffered by an inmate at the hands of another prisoner result in constitutional liability for prison officials under the Eighth Amendment." *Wilson v. Yaklich*, 148 F.3d 596, 600 (6th Cir. 1998).

To establish an Eighth Amendment claim that a prison official failed to protect an inmate, the inmate must show that the official was deliberately indifferent "to a substantial risk of serious harm" to the inmate. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994); *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004). To meet this standard, the inmate must show "that the official was subjectively aware of the risk" and "disregard[ed] that risk by failing to take reasonable measures to abate it." *Greene*, 361 F.3d at 294 (quoting *Farmer*, 511 U.S. at 847).

Here, Plaintiff alleges that, after he was moved from the Annex and threatened by La Raza gang members at two different cell locations in the medium-custody pod, he gave notice of the threats to Defendants Franks, White, Williams, Perry, Moon, and Carroll, all of whom ignored his report despite knowing that he had been a witness for the government. (Doc. No. 1 at 3.) Shortly thereafter, he was attacked and injured by a gang member, and Defendant Carroll (whom Plaintiff alleges deals drugs to the La Raza gang) called him a "rat" (*id.*), presumably in reference to Plaintiff's role as a government witness. *See Rose v. Cope*, No. 1:22-CV-891, 2025 WL 566319, at *8 (W.D. Mich. Jan. 22, 2025), *report and recommendation adopted*, 2025 WL 563928 (W.D. Mich. Feb. 20, 2025) (discussing "rat" label as indicating that inmate is a government informant or a "snitch," which puts inmate so labeled in danger). Plaintiff claims that these Defendants "knew (via internet) that I am [and] was a federal U.S. government documented witness, yet they let the gang threaten and assault me[.]" (*Id.* at 7.) Presuming these allegations true as the Court must at this initial stage, they are sufficient to state a colorable failure-to-protect claim against Defendants

8

Case 1:24-cv-00101   Document 9   Filed 05/27/25   Page 8 of 10 PageID #: 48

Franks, White, Williams, Perry, Moon, and Carroll in their individual capacities. This claim will proceed for further development.

Lastly, although the Complaint contains stray references to racial bias, denial of meals, failure to order an X-ray or take Plaintiff for outside medical attention, injuries from the cold of Plaintiff's room in Skylab/Ad-seg, and theft of his personal property, the Court does not find any such references sufficient at this stage to support any plausible claim to relief against any named Defendant.

## III. CONCLUSION

As explained above, Defendants Hininger, Smith, Baker, and Van Dyke are **DISMISSED** from this action.

Plaintiff's first motion to ascertain status (Doc. No. 5) is **GRANTED** insofar as this Order provides an update as to the status of this case. Plaintiff's second motion to ascertain status and "for Court to Notify Media" (Doc. No. 8) is **GRANTED** as to the request for status and **DENIED** as to the request to provide notice of this case to the local news media.

The Clerk is **DIRECTED** to send Plaintiff a service packet (a blank summons (AO 440) and USM 285 form) for each remaining Defendant. Plaintiff **MUST** complete the service packet(s) and return them to the Clerk's Office within **30 DAYS** of the entry of this Order. Failure to do so may result in the dismissal of this case. Upon return of the properly completed service packet(s), the Clerk is **DIRECTED** to issue summons(es) to the U.S. Marshals Service for service on the defendant(s). Fed. R. Civ. P. 4(b) and (c)(3).

The Court's determination that the Complaint states colorable claims for purposes of this initial screening does not preclude the Court from dismissing any claim at any time for the reasons

9

set forth in 28 U.S.C. § 1915(e)(2), nor does it preclude any Defendant from filing a motion to dismiss any claim under Federal Rule of Civil Procedure 12.

This action is **REFERRED** to the Magistrate Judge to enter a scheduling order for the management of the case, to dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B), and to conduct further proceedings, if necessary, under Rule 72(b) of the Federal Rules of Civil Procedure and the Local Rules of Court.

It is so **ORDERED**.

WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE